# EXHIBIT B

**Unclassified**                                          **DAFFE/IME/BR(97)20**



Organisation de Coopération et de Développement Economiques          **OLIS  :  08-Apr-1998**
Organisation for Economic Co-operation and Development               **Dist.  :  10-Apr-1998**

_____
                                                                            **Or. Eng.**

**DIRECTORATE FOR FINANCIAL, FISCAL AND ENTERPRISE AFFAIRS**
**COMMITTEE ON INTERNATIONAL INVESTMENT AND MULTINATIONAL ENTERPRISES**

**Working Group on Bribery in International Business Transactions (CIME)**

**CONVENTION ON COMBATING BRIBERY OF FOREIGN PUBLIC OFFICIALS IN
INTERNATIONAL BUSINESS TRANSACTIONS**

**and related Documents**

**64091**

**Document complet disponible sur OLIS dans son format d'origine**
**Complete document available on OLIS in its original format**

DAFFE/IME/BR(97)20

## TABLE OF CONTENTS

CONVENTION ON COMBATING BRIBERY OF FOREIGN PUBLIC OFFICIALS IN INTERNATIONAL BUSINESS TRANSACTIONS...................................................................................... 3

COMMENTARIES ON THE CONVENTION ON COMBATING BRIBERY OF FOREIGN PUBLIC OFFICIALS IN INTERNATIONAL BUSINESS TRANSACTIONS ........................................................ 12

REVISED RECOMMENDATION OF THE COUNCIL ON COMBATING BRIBERY IN INTERNATIONAL BUSINESS TRANSACTIONS.................................................................................. 19

RECOMMENDATION OF THE COUNCIL ON THE TAX DEDUCTIBILITY OF BRIBES TO FOREIGN PUBLIC OFFICIALS................................................................................................................. 28

DAFFE/IME/BR(97)20

## CONVENTION ON COMBATING BRIBERY OF FOREIGN PUBLIC OFFICIALS IN INTERNATIONAL BUSINESS TRANSACTIONS

**Adopted by the Negotiating Conference on 21 November 1997**

**Preamble**

**The Parties,**

**Considering** that bribery is a widespread phenomenon in international business transactions, including trade and investment, which raises serious moral and political concerns, undermines good governance and economic development, and distorts international competitive conditions;

**Considering** that all countries share a responsibility to combat bribery in international business transactions;

**Having regard** to the Revised Recommendation on Combating Bribery in International Business Transactions, adopted by the Council of the Organisation for Economic Co-operation and Development (OECD) on 23 May 1997, C(97)123/FINAL, which, *inter alia*, called for effective measures to deter, prevent and combat the bribery of foreign public officials in connection with international business transactions, in particular the prompt criminalisation of such bribery in an effective and co-ordinated manner and in conformity with the agreed common elements set out in that Recommendation and with the jurisdictional and other basic legal principles of each country;

**Welcoming** other recent developments which further advance international understanding and co-operation in combating bribery of public officials, including actions of the United Nations, the World Bank, the International Monetary Fund, the World Trade Organisation, the Organisation of American States, the Council of Europe and the European Union;

**Welcoming** the efforts of companies, business organisations and trade unions as well as other non-governmental organisations to combat bribery;

**Recognising** the role of governments in the prevention of solicitation of bribes from individuals and enterprises in international business transactions;

**Recognising** that achieving progress in this field requires not only efforts on a national level but also multilateral co-operation, monitoring and follow-up;

**Recognising** that achieving equivalence among the measures to be taken by the Parties is an essential object and purpose of the Convention, which requires that the Convention be ratified without derogations affecting this equivalence;

DAFFE/IME/BR(97)20

**Have agreed as follows:**

**Article 1**

**The Offence of Bribery of Foreign Public Officials**

1.      Each Party shall take such measures as may be necessary to establish that it is a criminal offence under its law for any person intentionally to offer, promise or give any undue pecuniary or other advantage, whether directly or through intermediaries, to a foreign public official, for that official or for a third party, in order that the official act or refrain from acting in relation to the performance of official duties, in order to obtain or retain business or other improper advantage in the conduct of international business.

2.      Each Party shall take any measures necessary to establish that complicity in, including incitement, aiding and abetting, or authorisation of an act of bribery of a foreign public official shall be a criminal offence.  Attempt and conspiracy to bribe a foreign public official shall be criminal offences to the same extent as attempt and conspiracy to bribe a public official of that Party.

3.      The offences set out in paragraphs 1 and 2 above are hereinafter referred to as "bribery of a foreign public official".

4.      For the purpose of this Convention:

   a. "foreign public official" means any person holding a legislative, administrative or judicial office of a foreign country, whether appointed or elected;  any person exercising a public function for a foreign country, including for a public agency or public enterprise; and any official or agent of a public international organisation;

   b. "foreign country" includes all levels and subdivisions of government, from national to local;

   c. "act or refrain from acting in relation to the performance of official duties" includes any use of the public official's position, whether or not within the official's authorised competence.

**Article 2**

**Responsibility of Legal Persons**

        Each Party shall take such measures as may be necessary, in accordance with its legal principles, to establish the liability of legal persons for the bribery of a foreign public official.

DAFFE/IME/BR(97)20

## Article 3

### Sanctions

1.      The bribery of a foreign public official shall be punishable by effective, proportionate and dissuasive criminal penalties.  The range of penalties shall be comparable to that applicable to the bribery of the Party's own public officials and shall, in the case of natural persons, include deprivation of liberty sufficient to enable effective mutual legal assistance and extradition.

2.      In the event that, under the legal system of a Party, criminal responsibility is not applicable to legal persons, that Party shall ensure that legal persons shall be subject to effective, proportionate and dissuasive non-criminal sanctions, including monetary sanctions, for bribery of foreign public officials.

3.      Each Party shall take such measures as may be necessary to provide that the bribe and the proceeds of the bribery of a foreign public official, or property the value of which corresponds to that of such proceeds, are subject to seizure and confiscation or that monetary sanctions of comparable effect are applicable.

4.      Each Party shall consider the imposition of additional civil or administrative sanctions upon a person subject to sanctions for the bribery of a foreign public official.

## Article 4

### Jurisdiction

1.      Each Party shall take such measures as may be necessary to establish its jurisdiction over the bribery of a foreign public official when the offence is committed in whole or in part in its territory.

2.      Each Party which has jurisdiction to prosecute its nationals for offences committed abroad shall take such measures as may be necessary to establish its jurisdiction to do so in respect of the bribery of a foreign public official, according to the same principles.

3.      When more than one Party has jurisdiction over an alleged offence described in this Convention, the Parties involved shall, at the request of one of them, consult with a view to determining the most appropriate jurisdiction for prosecution.

4.      Each Party shall review whether its current basis for jurisdiction is effective in the fight against the bribery of foreign public officials and, if it is not, shall take remedial steps.

DAFFE/IME/BR(97)20

## Article 5

### Enforcement

Investigation and prosecution of the bribery of a foreign public official shall be subject to the applicable rules and principles of each Party.  They shall not be influenced by considerations of national economic interest, the potential effect upon relations with another State or the identity of the natural or legal persons involved.

## Article 6

### Statute of Limitations

Any statute of limitations applicable to the offence of bribery of a foreign public official shall allow an adequate period of time for the investigation and prosecution of this offence.

## Article 7

### Money Laundering

Each Party which has made bribery of its own public official a predicate offence for the purpose of the application of its money laundering legislation shall do so on the same terms for the bribery of a foreign public official, without regard to the place where the bribery occurred.

## Article 8

### Accounting

1.      In order to combat bribery of foreign public officials effectively, each Party shall take such measures as may be necessary, within the framework of its laws and regulations regarding the maintenance of books and records, financial statement disclosures, and accounting and auditing standards, to prohibit the establishment of off-the-books accounts, the making of off-the-books or inadequately identified transactions, the recording of non-existent expenditures, the entry of liabilities with incorrect identification of their object, as well as the use of false documents, by companies subject to those laws and regulations, for the purpose of bribing foreign public officials or of hiding such bribery.

2.      Each Party shall provide effective, proportionate and dissuasive civil, administrative or criminal penalties for such omissions and falsifications in respect of the books, records, accounts and financial statements of such companies.

DAFFE/IME/BR(97)20

## Article 9

### Mutual Legal Assistance

1.      Each Party shall, to the fullest extent possible under its laws and relevant treaties and arrangements, provide prompt and effective legal assistance to another Party for the purpose of criminal investigations and proceedings brought by a Party concerning offences within the scope of this Convention and for non-criminal proceedings within the scope of this Convention brought by a Party against a legal person.  The requested Party shall inform the requesting Party, without delay, of any additional information or documents needed to support the request for assistance and, where requested, of the status and outcome of the request for assistance.

2.      Where a Party makes mutual legal assistance conditional upon the existence of dual criminality, dual criminality shall be deemed to exist if the offence for which the assistance is sought is within the scope of this Convention.

3.      A Party shall not decline to render mutual legal assistance for criminal matters within the scope of this Convention on the ground of bank secrecy.

## Article 10

### Extradition

1.      Bribery of a foreign public official shall be deemed to be included as an extraditable offence under the laws of the Parties and the extradition treaties between them.

2.      If a Party which makes extradition conditional on the existence of an extradition treaty receives a request for extradition from another Party with which it has no extradition treaty, it may consider this Convention to be the legal basis for extradition in respect of the offence of bribery of a foreign public official.

3.      Each Party shall take any measures necessary to assure either that it can extradite its nationals or that it can prosecute its nationals for the offence of bribery of a foreign public official.  A Party which declines a request to extradite a person for bribery of a foreign public official solely on the ground that the person is its national shall submit the case to its competent authorities for the purpose of prosecution.

4.      Extradition for bribery of a foreign public official is subject to the conditions set out in the domestic law and applicable treaties and arrangements of each Party.  Where a Party makes extradition conditional upon the existence of dual criminality, that condition shall be deemed to be fulfilled if the offence for which extradition is sought is within the scope of Article 1 of this Convention.

DAFFE/IME/BR(97)20

## Article 11

### Responsible Authorities

For the purposes of Article 4, paragraph 3, on consultation, Article 9, on mutual legal assistance and Article 10, on extradition, each Party shall notify to the Secretary-General of the OECD an authority or authorities responsible for making and receiving requests, which shall serve as channel of communication for these matters for that Party, without prejudice to other arrangements between Parties.

## Article 12

### Monitoring and Follow-up

The Parties shall co-operate in carrying out a programme of systematic follow-up to monitor and promote the full implementation of this Convention.  Unless otherwise decided by consensus of the Parties, this shall be done in the framework of the OECD Working Group on Bribery in International Business Transactions and according to its terms of reference, or within the framework and terms of reference of any successor to its functions, and Parties shall bear the costs of the programme in accordance with the rules applicable to that body.

## Article 13

### Signature and Accession

1.      Until its entry into force, this Convention shall be open for signature by OECD members and by non-members which have been invited to become full participants in its Working Group on Bribery in International Business Transactions.

2.      Subsequent to its entry into force, this Convention shall be open to accession by any non-signatory which is a member of the OECD or has become a full participant in the Working Group on Bribery in International Business Transactions or any successor to its functions.  For each such non-signatory, the Convention shall enter into force on the sixtieth day following the date of deposit of its instrument of accession.

## Article 14

### Ratification and Depositary

1.      This Convention is subject to acceptance, approval or ratification by the Signatories, in accordance with their respective laws.

2.      Instruments of acceptance, approval, ratification or accession shall be deposited with the Secretary-General of the OECD, who shall serve as Depositary of this Convention.

DAFFE/IME/BR(97)20

## Article 15

### Entry into Force

1.      This Convention shall enter into force on the sixtieth day following the date upon which five of the ten countries which have the ten largest export shares set out in DAFFE/IME/BR(97)18/FINAL (annexed), and which represent by themselves at least sixty per cent of the combined total exports of those ten countries, have deposited their instruments of acceptance, approval, or ratification.  For each signatory depositing its instrument after such entry into force, the Convention shall enter into force on the sixtieth day after deposit of its instrument.

2.      If, after 31 December 1998, the Convention has not entered into force under paragraph 1 above, any signatory which has deposited its instrument of acceptance, approval or ratification may declare in writing to the Depositary its readiness to accept entry into force of this Convention under this paragraph 2.  The Convention shall enter into force for such a signatory on the sixtieth day following the date upon which such declarations have been deposited by at least two signatories.  For each signatory depositing its declaration after such entry into force, the Convention shall enter into force on the sixtieth day following the date of deposit.

## Article 16

### Amendment

Any Party may propose the amendment of this Convention.  A proposed amendment shall be submitted to the Depositary which shall communicate it to the other Parties at least sixty days before convening a meeting of the Parties to consider the proposed amendment.  An amendment adopted by consensus of the Parties, or by such other means as the Parties may determine by consensus, shall enter into force sixty days after the deposit of an instrument of ratification, acceptance or approval by all of the Parties, or in such other circumstances as may be specified by the Parties at the time of adoption of the amendment.

## Article 17

### Withdrawal

A Party may withdraw from this Convention by submitting written notification to the Depositary.  Such withdrawal shall be effective one year after the date of the receipt of the notification.  After withdrawal, co-operation shall continue between the Parties and the Party  which has withdrawn on all requests for assistance or extradition made before the effective date of withdrawal which remain pending.

DAFFE/IME/BR(97)20

### ANNEX

### STATISTICS ON OECD EXPORTS

| OECD EXPORTS | | | |
|---|---|---|---|
| | | | |
| | 1990-1996 | 1990-1996 | 1990-1996 |
| | US$ million | % | % |
| | | of Total OECD | of 10 largest |
| United States | 287 118 | 15,9% | 19,7% |
| Germany | 254 746 | 14,1% | 17,5% |
| Japan | 212 665 | 11,8% | 14,6% |
| France | 138 471 | 7,7% | 9,5% |
| United Kingdom | 121 258 | 6,7% | 8,3% |
| Italy | 112 449 | 6,2% | 7,7% |
| Canada | 91 215 | 5,1% | 6,3% |
| Korea (1) | 81 364 | 4,5% | 5,6% |
| Netherlands | 81 264 | 4,5% | 5,6% |
| Belgium-Luxembourg | 78 598 | 4,4% | 5,4% |
| **Total 10 largest** | **1 459 148** | **81,0%** | **100%** |
| | | | |
| Spain | 42 469 | 2,4% | |
| Switzerland | 40 395 | 2,2% | |
| Sweden | 36 710 | 2,0% | |
| Mexico (1) | 34 233 | 1,9% | |
| Australia | 27 194 | 1,5% | |
| Denmark | 24 145 | 1,3% | |
| Austria* | 22 432 | 1,2% | |
| Norway | 21 666 | 1,2% | |
| Ireland | 19 217 | 1,1% | |
| Finland | 17 296 | 1,0% | |
| Poland (1) ** | 12 652 | 0,7% | |
| Portugal | 10 801 | 0,6% | |
| Turkey * | 8 027 | 0,4% | |
| Hungary ** | 6 795 | 0,4% | |
| New Zealand | 6 663 | 0,4% | |
| Czech Republic *** | 6 263 | 0,3% | |
| Greece * | 4 606 | 0,3% | |
| Iceland | 949 | 0,1% | |
| | | | |
| **Total OECD** | **1 801 661** | **100%** | |

Notes:  * 1990-1995; ** 1991-1996; *** 1993-1996
Source:   OECD, (1) IMF

DAFFE/IME/BR(97)20

Concerning Belgium-Luxembourg:  Trade statistics for Belgium and Luxembourg are available only on a combined basis for the two countries.  For purposes of Article 15, paragraph 1 of the Convention, if either Belgium or Luxembourg deposits its instrument of acceptance, approval or ratification, or if both Belgium and Luxembourg deposit their instruments of acceptance, approval or ratification, it shall be considered that one of the countries which have the ten largest exports shares has deposited its instrument and the joint exports of both countries will be counted towards the 60 percent of combined total exports of those ten countries, which is required for entry into force under this provision.

DAFFE/IME/BR(97)20

**COMMENTARIES ON THE CONVENTION ON COMBATING BRIBERY OF FOREIGN PUBLIC OFFICIALS IN INTERNATIONAL BUSINESS TRANSACTIONS**

**Adopted by the Negotiating Conference on 21 November 1997**

**General:**

1.      This Convention deals with what, in the law of some countries, is called "active corruption" or "active bribery", meaning the offence committed by the person who promises or gives the bribe, as contrasted with "passive bribery", the offence committed by the official who receives the bribe.  The Convention does not utilise the term "active bribery" simply to avoid it being misread by the non-technical reader as implying that the briber has taken the initiative and the recipient is a passive victim.  In fact, in a number of situations, the recipient will have induced or pressured the briber and will have been, in that sense, the more active.

2.      This Convention seeks to assure a functional equivalence among the measures taken by the Parties to sanction bribery of foreign public officials, without requiring uniformity or changes in fundamental principles of a Party's legal system.

**Article 1.  The Offence of Bribery of Foreign Public Officials:**

        Re paragraph 1:

3.      Article 1 establishes a standard to be met by Parties, but does not require them to utilise its precise terms in defining the offence under their domestic laws.  A Party may use various approaches to fulfil its obligations, provided that conviction of a person for the offence does not require proof of elements beyond those which would be required to be proved if the offence were defined as in this paragraph.  For example, a statute prohibiting the bribery of agents generally which does not specifically address bribery of a foreign public official, and a statute specifically limited to this case, could both comply with this Article.  Similarly, a statute which defined the offence in terms of payments "to induce a breach of the official's duty" could meet the standard provided that it was understood that every public official had a duty to exercise judgement or discretion impartially and this was an "autonomous" definition not requiring proof of the law of the particular official's country.

4.      It is an offence within the meaning of paragraph 1 to bribe to obtain or retain business or other improper advantage whether or not the company concerned was the best qualified bidder or was otherwise a company which could properly have been awarded the business.

5.      "Other improper advantage" refers to something to which the company concerned was not clearly entitled, for example, an operating permit for a factory which fails to meet the statutory requirements.

6.      The conduct described in paragraph 1 is an offence whether the offer or promise is made or the pecuniary or other advantage is given on that person's own behalf or on behalf of any other natural person or legal entity.

7.      It is also an offence irrespective of, inter alia, the value of the advantage, its results, perceptions of local custom, the tolerance of such payments by local authorities, or the alleged necessity of the payment in order to obtain or retain business or other improper advantage.

8.      It is not an offence, however, if the advantage was permitted or required by the written law or regulation of the foreign public official's country, including case law.

9.      Small "facilitation" payments do not constitute payments made "to obtain or retain business or other improper advantage" within the meaning of paragraph 1 and, accordingly, are also not an offence. Such payments, which, in some countries, are made to induce public officials to perform their functions, such as issuing licenses or permits, are generally illegal in the foreign country concerned.  Other countries can and should address this corrosive phenomenon by such means as support for programmes of good governance.    However, criminalisation by other countries does not seem a practical or effective complementary action.

10.      Under the legal system of some countries, an advantage promised or given to any person, in anticipation of his or her becoming a foreign public official, falls within the scope of the offences described in Article 1, paragraph 1 or 2.  Under the legal system of many countries, it is considered technically distinct from the offences covered by the present Convention.  However, there is a commonly shared concern and intent to address this phenomenon through further work.


        Re paragraph 2:

11.      The offences set out in paragraph 2 are understood in terms of their normal content in national legal systems.  Accordingly, if authorisation, incitement, or one of the other listed acts, which does not lead to further action, is not itself punishable under a Party's legal system, then the Party would not be required to make it punishable with respect to bribery of a foreign public official.


        Re paragraph 4:

12.      "Public function" includes any activity in the public interest, delegated by a foreign country, such as  the performance of a task delegated by it in connection with public procurement.

13.      A "public agency" is an entity constituted under public law to carry out specific tasks in the public interest.

14.      A "public enterprise" is any enterprise, regardless of its legal form, over which a government, or governments, may, directly or indirectly, exercise a dominant influence.  This is deemed to be the case, inter alia, when the government or governments hold the majority of the enterprise's subscribed capital, control the majority of votes attaching to shares issued by the enterprise or can appoint a majority of the members of the enterprise's administrative or managerial body or supervisory board.

DAFFE/IME/BR(97)20

15.    An official of a public enterprise shall be deemed to perform a public function unless the enterprise operates on a normal commercial basis in the relevant market, i.e., on a basis which is substantially equivalent to that of a private enterprise, without preferential subsidies or other privileges.

16.    In special circumstances, public authority may in fact be held by persons (e.g., political party officials in single party states) not formally designated as public officials.  Such persons, through their *de facto* performance of a public function, may, under the legal principles of some countries, be considered to be foreign public officials.

17.    "Public international organisation" includes any international organisation formed by states, governments, or other public international organisations, whatever the form of organisation and scope of competence, including, for example, a regional economic integration organisation such as the European Communities.

18.    "Foreign country" is not limited to states, but includes any organised foreign area or entity, such as an autonomous territory or a separate customs territory.

19.    One case of bribery which has been contemplated under the definition in paragraph 4.c is where an executive of a company gives a bribe to a senior official of a government, in order that this official use his office -- though acting outside his competence -- to make another official award a contract to that company.

## Article 2.  Responsibility of Legal Persons:

20.    In the event that, under the legal system of a Party, criminal responsibility is not applicable to legal persons, that Party shall not be required to establish such criminal responsibility.

## Article 3.  Sanctions:

Re paragraph 3:

21.    The "proceeds" of bribery are the profits or other benefits derived by the briber from the transaction or other improper advantage obtained or retained through bribery.

22.    The term "confiscation" includes forfeiture where applicable and means the permanent deprivation of property by order of a court or other competent authority.  This paragraph is without prejudice to rights of victims.

23.    Paragraph 3 does not preclude setting appropriate limits to monetary sanctions.

Re paragraph 4:

24.    Among the civil or administrative sanctions, other than non-criminal fines, which might be imposed upon legal persons for an act of bribery of a foreign public official are: exclusion from entitlement to public benefits or aid; temporary or permanent disqualification from participation in public procurement or from the practice of other commercial activities;  placing under judicial supervision; and a judicial winding-up order.

**Article 4.  Jurisdiction:**

Re paragraph 1:

25.      The territorial basis for jurisdiction should be interpreted broadly so that an extensive physical connection to the bribery act is not required.

Re paragraph 2:

26.      Nationality jurisdiction is to be established according to the general principles and conditions in the legal system of each Party.  These principles deal with such matters as dual criminality.  However, the requirement of dual criminality should be deemed to be met if the act is unlawful where it occurred, even if under a different criminal statute.  For countries which apply nationality jurisdiction only to certain types of offences, the reference to "principles" includes the principles upon which such selection is based.

**Article 5.  Enforcement:**

27.      Article 5 recognises the fundamental nature of national regimes of prosecutorial discretion.  It recognises as well that, in order to protect the independence of prosecution, such discretion is to be exercised on the basis of professional motives and is not to be subject to improper influence by concerns of a political nature.  Article 5 is complemented by paragraph 6 of the Annex to the 1997 OECD Revised Recommendation on Combating Bribery in International Business Transactions, C(97)123/FINAL (hereinafter, "1997 OECD Recommendation"), which recommends, inter alia, that complaints of bribery of foreign public  officials should be seriously investigated by competent authorities and that adequate resources should be provided by national governments to permit effective prosecution of such bribery. Parties will have accepted this Recommendation, including its monitoring and follow-up arrangements.

**Article 7.  Money Laundering:**

28.      In Article 7, "bribery of its own public official" is intended broadly, so that bribery of a foreign public official is to be made a predicate offence for money laundering legislation on the same terms, when a Party has made either active or passive bribery of its own public official such an offence.  When a Party has made only passive bribery of its own public officials a predicate offence for money laundering purposes, this article requires that the laundering of the bribe payment be subject to money laundering legislation.

**Article 8.  Accounting:**

29.      Article 8 is related to section V of the 1997 OECD Recommendation, which all Parties will have accepted and which is subject to follow-up in the OECD Working Group on Bribery in International Business Transactions.  This paragraph contains a series of recommendations concerning accounting requirements, independent external audit and internal company controls the implementation of which will be important to the overall effectiveness of the fight against bribery in international business.  However, one immediate consequence of the implementation of this Convention by the Parties will be that companies which are required to issue financial statements disclosing their material contingent liabilities will need to take into account the full potential liabilities under this Convention, in particular its Articles 3

DAFFE/IME/BR(97)20

and 8, as well as other losses which might flow from conviction of the company or its agents for bribery. This also has implications for the execution of professional responsibilities of auditors regarding indications of bribery of foreign public officials. In addition, the accounting offences referred to in Article 8 will generally occur in the company's home country, when the bribery offence itself may have been committed in another country, and this can fill gaps in the effective reach of the Convention.

### Article 9.  Mutual Legal Assistance:

30.     Parties will have also accepted, through paragraph 8 of the Agreed Common Elements annexed to the 1997 OECD Recommendation, to explore and undertake means to improve the efficiency of mutual legal assistance.

        Re paragraph 1:

31.     Within the framework of paragraph 1 of Article 9, Parties should, upon request, facilitate or encourage the presence or availability of persons, including persons in custody, who consent to assist in investigations or participate in proceedings. Parties should take measures to be able, in appropriate cases, to transfer temporarily such a person in custody to a Party requesting it and to credit time in custody in the requesting Party to the transferred person's sentence in the requested Party. The Parties wishing to use this mechanism should also take measures to be able, as a requesting Party, to keep a transferred person in custody and return this person without necessity of extradition proceedings.

        Re paragraph 2:

32.     Paragraph 2 addresses the issue of identity of norms in the concept of dual criminality. Parties with statutes as diverse as a statute prohibiting the bribery of agents generally and a statute directed specifically at bribery of foreign public officials should be able to co-operate fully regarding cases whose facts fall within the scope of the offences described in this Convention.

### Article 10.  Extradition

        Re paragraph 2:

33.     A Party may consider this Convention to be a legal basis for extradition if, for one or more categories of cases falling within this Convention, it requires an extradition treaty. For example, a country may consider it a basis for extradition of its nationals if it requires an extradition treaty for that category but does not require one for extradition of non-nationals.

**Article 12.  Monitoring and Follow-up:**

34.      The current terms of reference of the OECD Working Group on Bribery which are relevant to monitoring and follow-up are set out in Section VIII of the 1997 OECD Recommendation.  They provide for:

    i)  receipt of notifications and other information submitted to it by the [participating] countries;

    ii) regular reviews of steps taken by [participating] countries to implement the Recommendation and to make proposals, as appropriate, to assist [participating] countries in its implementation; these reviews will be based on the following complementary systems:

        -- a system of self evaluation, where [participating] countries' responses on the basis of a questionnaire will provide a basis for assessing the implementation of the Recommendation;

        -- a system of mutual evaluation, where each [participating] country will be examined in turn by the Working Group on Bribery, on the basis of a report which will provide an objective assessment of the progress of the [participating] country in implementing the Recommendation.

    iii) examination of specific issues relating to bribery in international business transactions;

    ...

    v)  provision of regular information to the public on its work and activities and on implementation of the Recommendation.

35.      The costs of monitoring and follow-up will, for OECD Members, be handled through the normal OECD budget process.  For non-members of the OECD, the current rules create an equivalent system of cost sharing, which is described in the Resolution of the Council Concerning Fees for Regular Observer Countries and Non-Member Full Participants in OECD Subsidiary Bodies, C(96)223/FINAL.

36.      The follow-up of any aspect of the Convention which is not also follow-up of the 1997 OECD Recommendation or any other instrument accepted by all the participants in the OECD Working Group on Bribery will be carried out by the Parties to the Convention and, as appropriate, the participants party to another, corresponding instrument.

DAFFE/IME/BR(97)20

**Article 13.  Signature and Accession:**

37.       The Convention will be open to non-members which become full participants in the OECD Working Group on Bribery in International Business Transactions.  Full participation by non-members in this Working Group is encouraged and arranged under simple procedures.  Accordingly, the requirement of full participation in the Working Group, which follows from the relationship of the Convention to other aspects of the fight against bribery in international business, should not be seen as an obstacle by countries wishing to participate in that fight.  The Council of the OECD has appealed to non-members to adhere to the 1997 OECD Recommendation and to participate in any institutional follow-up or implementation mechanism, i.e., in the Working Group.  The current procedures regarding full participation by non-members in the Working Group may be found in the Resolution of the Council concerning the Participation of Non-Member Economies in the Work of Subsidiary Bodies of the Organisation, C(96)64/REV1/FINAL.   In addition to accepting the Revised Recommendation of the Council on Combating Bribery, a full participant also accepts the Recommendation on the Tax Deductibility of Bribes of Foreign Public Officials, adopted on 11 April 1996, C(96)27/FINAL.

DAFFE/IME/BR(97)20

**REVISED RECOMMENDATION OF THE COUNCIL ON COMBATING BRIBERY IN INTERNATIONAL BUSINESS TRANSACTIONS**

**Adopted by the Council on 23 May 1997**

**THE COUNCIL,**

**Having regard** to Articles 3, 5a) and 5 b) of the Convention on the Organisation for Economic Co-operation and Development of 14 December 1960;

**Considering** that bribery is a widespread phenomenon in international business transactions, including trade and investment, raising serious moral and political concerns and distorting international competitive conditions;

**Considering** that all countries share a responsibility to combat bribery in international business transactions;

**Considering** that enterprises should refrain from bribery of public servants and holders of public office, as stated in the OECD Guidelines for Multinational Enterprises;

**Considering** the progress which has been made in the implementation of the initial Recommendation of the Council on Bribery in International Business Transactions adopted on 27 May 1994, C(94)75/FINAL and the related Recommendation on the tax deductibility of bribes of foreign public officials adopted on 11 April 1996, C(96)27/FINAL;  as well as the Recommendation concerning Anti-corruption Proposals for Bilateral Aid Procurement, endorsed by the High Level Meeting of the Development Assistance Committee on 7 May 1996;

**Welcoming** other recent developments which further advance international understanding and co-operation regarding bribery in business transactions, including actions of the United Nations, the Council of Europe, the European Union and the Organisation of American States;

**Having regard to** the commitment made at the meeting of the Council at Ministerial level in May 1996, to criminalise the bribery of foreign public officials in an effective and co-ordinated manner;

**Noting** that an international convention in conformity with the agreed common elements set forth in the Annex, is an appropriate instrument to attain such criminalisation rapidly.

**Considering** the consensus which has developed on the measures which should be taken to implement the 1994 Recommendation, in particular, with respect to the modalities and international instruments to facilitate criminalisation of bribery of foreign public officials;  tax deductibility of bribes to

19

DAFFE/IME/BR(97)20

foreign public officials; accounting requirements, external audit and internal company controls; and rules and regulations on public procurement;

**Recognising** that achieving progress in this field requires not only efforts by individual countries but multilateral co-operation, monitoring and follow-up;

**General**

I.        **RECOMMENDS** that Member countries take effective measures to deter, prevent and combat the bribery of foreign public officials in connection with international business transactions.

II.       **RECOMMENDS** that each Member country examine the following areas and, in conformity with its jurisdictional and other basic legal principles, take concrete and meaningful steps to meet this goal:

   i)      criminal laws and their application, in accordance with section III and the Annex to this Recommendation;

   ii)     tax legislation, regulations and practice, to eliminate any indirect support of bribery, in accordance with section IV;

   iii)    company and business accounting, external audit and internal control requirements and practices, in accordance with section V;

   iv)     banking, financial and other relevant provisions, to ensure that adequate records would be kept and made available for inspection and investigation;

   v)      public subsidies, licences, government procurement contracts or other public advantages, so that advantages could be denied as a sanction for bribery in appropriate cases, and in accordance with section VI for procurement contracts and aid procurement;

   vi)     civil, commercial, and administrative laws and regulations, so that such bribery would be illegal;

   vii)    international co-operation in investigations and other legal proceedings, in accordance with section VII.

**Criminalisation of Bribery of Foreign Public Officials**

III.      **RECOMMENDS** that Member countries should criminalise the bribery of foreign public officials in an effective and co-ordinated manner by submitting proposals to their legislative bodies by 1 April 1998, in conformity with the agreed common elements set forth in the Annex, and seeking their enactment by the end of 1998.

**DECIDES**, to this end, to open negotiations promptly on an international convention to criminalise bribery in conformity with the agreed common elements, the treaty to be open for signature by the end of 1997, with a view to its entry into force twelve months thereafter.

## Tax Deductibility

IV.     **URGES** the prompt implementation by Member countries of the 1996 Recommendation which reads as follows: "that those Member countries which do not disallow the deductibility of bribes to foreign public officials re-examine such treatment with the intention of denying this deductibility.  Such action may be facilitated by the trend to treat bribes to foreign officials as illegal."

## Accounting Requirements, External Audit and Internal Company Controls

V.     **RECOMMENDS** that Member countries take the steps necessary so that laws, rules and practices with respect to accounting requirements, external audit and internal company controls are in line with the following principles and are fully used in order to prevent and detect bribery of foreign public officials in international business.

A. Adequate accounting requirements

i)      Member countries should require companies to maintain adequate records of the sums of money received and expended by the company, identifying the matters in respect of which the receipt and expenditure takes place.  Companies should be prohibited from making off-the-books transactions or keeping off-the-books accounts.

ii)     Member countries should require companies to disclose in their financial statements the full range of material contingent liabilities.

iii)    Member countries should adequately sanction accounting omissions, falsifications and fraud.

B. Independent External Audit

i)      Member countries should consider whether requirements to submit to external audit are adequate.

ii)     Member countries and professional associations should maintain adequate standards to ensure the independence of external auditors which permits them to provide an objective assessment of company accounts, financial statements and internal controls.

iii)    Member countries should require the auditor who discovers indications of a possible illegal act of bribery to report this discovery to management and, as appropriate, to corporate monitoring bodies.

iv)     Member countries should consider requiring the auditor to report indications of a possible illegal act of bribery to competent authorities.

C. Internal company controls

i)      Member countries should encourage the development and adoption of adequate internal company controls, including standards of conduct.

DAFFE/IME/BR(97)20

ii)   Member countries should encourage company management to make statements in their annual reports about their internal control mechanisms, including those which contribute to preventing bribery.

iii)  Member countries should encourage the creation of monitoring bodies, independent of management, such as audit committees of boards of directors or of supervisory boards.

iv)   Member countries should encourage companies to provide channels for communication by, and protection for, persons not willing to violate professional standards or ethics under instructions or pressure from hierarchical superiors.

### Public procurement

VI.   **RECOMMENDS**:

i)   Member countries should support the efforts in the World Trade Organisation to pursue an agreement on transparency in government procurement;

ii)   Member countries' laws and regulations should permit authorities to suspend from competition for public contracts enterprises determined to have bribed foreign public officials in contravention of that Member's national laws and, to the extent a Member applies procurement sanctions to enterprises that are determined to have bribed domestic public officials, such sanctions should be applied equally in case of bribery of foreign public officials.[1]

iii)  In accordance with the Recommendation of the Development Assistance Committee, Member countries should require anti-corruption provisions in bilateral aid-funded procurement, promote the proper implementation of anti-corruption provisions in international development institutions, and work closely with development partners to combat corruption in all development co-operation efforts.[2]

### International Co-operation

VII.   **RECOMMENDS** that Member countries, in order to combat bribery in international business transactions, in conformity with their jurisdictional and other basic legal principles, take the following actions:

i)   consult and otherwise co-operate with appropriate authorities in other countries in investigations and other legal proceedings concerning specific cases of such bribery through

---

[1]   Member countries' systems for applying sanctions for bribery of domestic officials differ as to whether the determination of bribery is based on a criminal conviction, indictment or administrative procedure, but in all cases it is based on substantial evidence.

[2]   This paragraph summarises the DAC recommendation, which is addressed to DAC members only, and addresses it to all OECD Members and eventually non-member countries which adhere to the Recommendation.

DAFFE/IME/BR(97)20

such means as sharing of information (spontaneously or upon request), provision of evidence and extradition;

ii)  make full use of existing agreements and arrangements for mutual international legal assistance and where necessary, enter into new agreements or arrangements for this purpose;

iii)  ensure that their national laws afford an adequate basis for this co-operation and, in particular, in accordance with paragraph 8 of the Annex.

### Follow-up and institutional arrangements

VIII.  **INSTRUCTS** the Committee on International Investment and Multinational Enterprises, through its Working Group on Bribery in International Business Transactions, to carry out a programme of systematic follow-up to monitor and promote the full implementation of this Recommendation, in co-operation with the Committee for Fiscal Affairs, the Development Assistance Committee and other OECD bodies, as appropriate.  This follow-up will include, in particular:

i)  receipt of notifications and other information submitted to it by the Member countries;

ii)  regular reviews of steps taken by Member countries to implement the Recommendation and to make proposals, as appropriate, to assist Member countries in its implementation;  these reviews will be based on the following complementary systems:

-- a system of self-evaluation, where Member countries' responses on the basis of a questionnaire will provide a basis for assessing the implementation of the Recommendation;

-- a system of mutual evaluation, where each Member country will be examined in turn by the Working Group on Bribery, on the basis of a report which will provide an objective assessment of the progress of the Member country in implementing the Recommendation.

iii)  examination of specific issues relating to bribery in international business transactions;

iv)  examination of the feasibility of broadening the scope of the work of the OECD to combat international bribery to include private sector bribery and bribery of foreign officials for reasons other than to obtain or retain business;

v)  provision of regular information to the public on its work and activities and on implementation of the Recommendation.

IX.  **NOTES** the obligation of Member countries to co-operate closely in this follow-up programme, pursuant to Article 3 of the OECD Convention.

X.  **INSTRUCTS** the Committee on International Investment and Multinational Enterprises to review  the implementation of Sections III and, in co-operation with the Committee on Fiscal Affairs, Section IV of this Recommendation and report to Ministers in Spring 1998, to report to the Council after the first regular review and as appropriate there after, and to review this Revised Recommendation within three years after its adoption.

DAFFE/IME/BR(97)20

### Co-operation with non members

XI.      **APPEALS** to non-member countries to adhere to the Recommendation and participate in any institutional follow-up or implementation mechanism.

XII.      **INSTRUCTS** the Committee on International Investment and Multinational Enterprises through its Working Group on Bribery, to provide a forum for consultations with countries which have not yet adhered, in order to promote wider participation in the Recommendation and its follow-up.

### Relations with international governmental and non-governmental organisations

XIII.      **INVITES** the Committee on International Investment and Multinational Enterprises through its Working Group on Bribery, to consult and co-operate with the international organisations and international financial institutions active in the combat against bribery in international business transactions and consult regularly with the non-governmental organisations and representatives of the business community active in this field.

**ANNEX**

**Agreed Common Elements of Criminal Legislation and Related Action**

1)      *Elements of the offence of active bribery*

i)    *Bribery* is understood as the promise or giving of any undue payment or other advantages, whether directly or through intermediaries to a public official, for himself or for a third party, to influence the official to act or refrain from acting in the performance of his or her official duties in order to obtain or retain business.

ii)   *Foreign public official* means any person holding a legislative, administrative or judicial office of a foreign country or in an international organisation, whether appointed or elected or, any person exercising a public function or task in a foreign country.

iii)  *The offeror* is any person, on his own behalf or on the behalf of any other natural person or legal entity.

2)      *Ancillary elements or offences*

The general criminal law concepts of attempt, complicity and/or conspiracy of the law of the prosecuting state are recognised as applicable to the offence of bribery of a foreign public official.

3)      *Excuses and defences*

Bribery of foreign public officials in order to obtain or retain business is an offence irrespective of the value or the outcome of the bribe, of perceptions of local custom or of the tolerance of bribery by local authorities.

4)      *Jurisdiction*

Jurisdiction over the offence of bribery of foreign public officials should in any case be established when the offence is committed in whole or in part in the prosecuting State's territory. The territorial basis for jurisdiction should be interpreted broadly so that an extensive physical connection to the bribery act is not required.

States which prosecute their nationals for offences committed abroad should do so in respect of the bribery of foreign public officials according to the same principles.

DAFFE/IME/BR(97)20

States which do not prosecute on the basis of the nationality principle should be prepared to extradite their nationals in respect of the bribery of foreign public officials.

All countries should review whether their current basis for jurisdiction is effective in the fight against bribery of foreign public officials and, if not, should take appropriate remedial steps.

5)    *Sanctions*

The offence of bribery of foreign public officials should be sanctioned/punishable by effective, proportionate and dissuasive criminal penalties, sufficient to secure effective mutual legal assistance and extradition, comparable to those applicable to the bribers in cases of corruption of domestic public officials.

Monetary or other civil, administrative or criminal penalties on any legal person involved, should be provided, taking into account the amounts of the bribe and of the profits derived from the transaction obtained through the bribe.

Forfeiture or confiscation of instrumentalities and of the bribe benefits and the profits derived from the transactions obtained through the bribe should be provided, or comparable fines or damages imposed.

6)    *Enforcement*

In view of the seriousness of the offence of bribery of foreign public officials, public prosecutors should exercise their discretion independently, based on professional motives.  They should not be influenced by considerations of national economic interest, fostering good political relations or the identity of the victim.

Complaints of victims should be seriously investigated by the competent authorities.

The statute of limitations should allow adequate time to address this complex offence.

National governments should provide adequate resources to prosecuting authorities so as to permit effective prosecution of bribery of foreign public officials.

7)    *Connected provisions (criminal and non-criminal)*

--   Accounting, recordkeeping and disclosure requirements

In order to combat bribery of foreign public officials effectively, states should also adequately sanction accounting omissions, falsifications and fraud.

--   Money laundering

The bribery of foreign public officials should be made a predicate offence for purposes of money laundering legislation where bribery of a domestic public official is a money laundering predicate offence, without regard to the place where the bribery occurs.

DAFFE/IME/BR(97)20

8)        *International co-operation*

Effective mutual legal assistance is critical to be able to investigate and obtain evidence in order to prosecute cases of bribery of foreign public officials.

Adoption of laws criminalising the bribery of foreign public officials would remove obstacles to mutual legal assistance created by dual criminality requirements.

Countries should tailor their laws on mutual legal assistance to permit co-operation with countries investigating cases of bribery of foreign public officials even including third countries (country of the offeror; country where the act occurred) and countries applying different types of criminalisation legislation to reach such cases.

Means should be explored and undertaken to improve the efficiency of mutual legal assistance.

DAFFE/IME/BR(97)20

## RECOMMENDATION OF THE COUNCIL ON THE TAX DEDUCTIBILITY OF BRIBES TO FOREIGN PUBLIC OFFICIALS

**adopted by the Council on 11 April 1996**

**THE COUNCIL,**

Having regard to Article 5 b) of the Convention on the Organisation for Economic Co-operation and Development of 14th December 1960;

Having regard to the OECD Council Recommendation on Bribery in International Business Transactions [C(94)75/FINAL];

Considering that bribery is a widespread phenomenon in international business transactions, including trade and investment, raising serious moral and political concerns and distorting international competitive conditions;

Considering that the Council Recommendation on Bribery called on Member countries to take concrete and meaningful steps to combat bribery in international business transactions, including examining tax measures which may indirectly favour bribery;

On the proposal of the Committee on Fiscal Affairs and the Committee on International Investment and Multinational Enterprises:

I.  RECOMMENDS that those Member countries which do not disallow the deductibility of bribes to foreign public officials re-examine such treatment with the intention of denying this deductibility.  Such action may be facilitated by the trend to treat bribes to foreign public officials as illegal.

II. INSTRUCTS the Committee on Fiscal Affairs, in cooperation with the Committee on International Investment and Multinational Enterprises, to monitor the implementation of this Recommendation, to promote the Recommendation in the context of contacts with non-Member countries and to report to the Council as appropriate.