# EXHIBIT A



# Report of the Inquiry into certain Australian companies in relation to the UN Oil-for-Food Programme

## Volume 4

**Findings**

Commissioner
The Honourable Terence RH Cole AO RFD QC

November 2006

# 31 Findings: AWB and associated persons

31.1  Counsel Assisting have submitted that the findings I have made of factual circumstances should be considered against certain Commonwealth, State and Territory legislation in order to determine whether there might have been the commission of an offence. Appendix 26 is an analysis prepared by Counsel Assisting of possibly applicable laws required to be considered. I first address those statutes which in my view have no application.

### Offences involving bribery or secret commissions

- Division 70 Criminal Code: Bribery of Foreign Officials
- Section 176 (2) of the *Crimes Act 1958* (Vic)

For the reasons advanced in Appendix 26, these offences have no application to the facts as found.

### Offences involving money laundering

- Confiscation Act 1997 (Vic) s. 122 and s. 123 prior to 1 January 2004
- Crimes Act 1958 (Vic) s. 194 and s. 195 after 1 January 2004

31.2  If AWB dishonestly obtained a financial advantage contrary to s. 82 of the *Crimes Act 1958* (Vic) for itself or Tigris in recovering from the United Nations escrow account the Tigris debt, the question arises whether it might have committed an offence against s. 194 or 195 of the *Crimes Act 1958* (Vic) after 1 January 2004, or s. 122 or s. 123 of the *Confiscation Act 1997* (Vic) prior to that date.

31.3  Each offence requires either that the person knew that the property being dealt with was the proceeds of crime or was reckless as to whether or not it was the proceeds of crime.

31.4  There is no evidence that AWB or its officers knew that the recovered funds were the proceeds of crime. AWB and its officers sought advice regarding whether it was legally entitled to pay such monies to Tigris. Seeking such



# Report of the Inquiry into certain Australian companies in relation to the UN Oil-for-Food Programme

## Volume 5

## Appendices

Commissioner
The Honourable Terence RH Cole AO RFD QC

November 2006

would be necessary to consider each act that constituted each alleged deception and then consider whether a significant part of that conduct occurred in Victoria. In the case of a deception arising from the forwarding of a Notification form and contractual documentation to DFAT (and as a result of the fact that those documents omitted to inform DFAT that there were collateral arrangements relating to the payment of inland transportation and after-sales-service fees and that those fees had been incorporated in the contract price), if those documents were forwarded from AWB's or Rhine Ruhr's Victorian offices, it is open to conclude that a significant part of the relevant conduct occurred in Victoria.

A significant issue likely to arise in relation to any alleged offence that contains as an element a deception or false pretence practised on the United Nations is that the relevant companies did not communicate directly with the United Nations. All documentation and other material communications between the companies and the United Nations occurred through DFAT. An offence involving a deception or false representation can, however, be made out in circumstances where the false representation or deception is communicated to the victim through an innocent agent. In *White v Ridley*[98], Gibbs J said:

> However, it is well settled at common law that a person who commits a crime by the use of an innocent agent is himself liable as a principal offender. That is so not only where the agent lacks criminal responsibility, as, for example, when he is insane or too young to know what he is doing, but also where the agent, although of sound mind and full understanding, is ignorant of the true facts and believes that what he is doing is lawful. Thus, if A sends out B with a forged bank note for the purpose of passing it, and B does so, being ignorant that it was forged, A is guilty of uttering and publishing the note as true, since 'where an innocent person is employed for a criminal purpose, the employer must be answerable': *R v Palmer and Hudson*. If A gives B false particulars to enter in a register, and B enters them in the belief that they are true, A is guilty of making the false entry in the register: *Reg v Butt*.

As discussed in Chapter 36, DFAT did not know that there was anything false or misleading about the documentation that it forwarded to the United Nations in respect of AWB's wheat contracts, or that the documentation had omitted from it material facts relating to the arrangements between AWB and the Iraqis. There is evidence that demonstrates that relevant officers of AWB knew that DFAT sent the documentation to the United Nations for the purpose of approval by the United Nations, that the documentation made no reference to the collateral arrangements between AWB and the IGB in relation to inland transportation fees and the incorporation of these fees in the contract price and that DFAT did not know about those arrangements. For all intents and purposes DFAT was an innocent agent.

## Offences involving bribery or secret commissions

There are offence in both the Criminal Code and various the Crimes Acts and Codes of various States that involve the payment of bribes and secret commissions and other corrupt practises that are potentially applicable.

**Criminal Code—bribery of foreign officials**

Division 70 of the Criminal Code was inserted into the Criminal Code with operation from 17 December 1999[99] to give domestic effect to Australia's ratification of the Convention on Combating Bribery of Foreign Public Officials in International Business Transactions. Subsection 70.2(1) of the Criminal Code provides as follows:

> 70.2 (1) a person is guilty of an offence if:
>
> (a) the person:
>
> (i) provides a benefit to another person; or
>
> (ii) causes a benefit to be provided to another person; or
>
> (iii) offers to provide, or promises to provide, a benefit to another person; or
>
> (iv) causes an offer of the provision of a benefit, or a promise of the provision of a benefit, to be made to another person; and
>
> (b) the benefit is not legitimately due to the other person; and
>
> (c) the first-mentioned person does so with the intention of influencing a foreign public official (who may be the other person) in the exercise of the official's duties as a foreign public official in order to:
>
> (i) obtain or retain business; or
>
> (ii) obtain or retain a business advantage that is not legitimately due to the recipient, or intended recipient, of the business advantage (who may be the first-mentioned person)
>
> Penalty: Imprisonment for 10 years.

The elements of the offence created by subsection 70.2(1), relevant to the matter at hand, are as follows:

The defendant:

(1) promises to provide a benefit to be provided to another person (A); and

(2) the benefit is not legitimately due to A;

(3) with the intention of influencing a foreign public official (who may be the same person as A) in the exercise of the official's duties as a foreign public official;

(4) in order to obtain or retain business.

For the purpose of considering the potential availability of this offence, it will be assumed that the defendant is AWB, the other person (A) is an Iraqi Ministry or

Government entity (for example the Iraqi State Company for Water Transport) and the foreign public official is the Director General of the Iraqi Grains Board. In the absence of any contrary intention in the section, the person to whom the benefit is paid (A) can be a body politic.[100]

In relation to element (1), 'benefit' is defined in section 70.1 as including any advantage and is not limited to property. Proof that AWB promised to pay money (indirectly via Alai) to the Iraqi State Company for Water Transport or any other Iraqi entity, in the form of inland transportation or after-sales-service fees, would satisfy element (1).

In relation to element (2), the Criminal Code does not define the circumstances in which a benefit is to be found to be not legitimately due. However, subsection 70.2(2) provides that in working out if a benefit is not legitimately due, the following matters should be disregarded:

(a)   the fact that the benefit may be customary, or perceived to be customary, in the situation

(b)   the value of the benefit

(c)   any official tolerance of the benefit.

There are difficulties in determining whether the benefits received, or to be received, by the Iraqi State Company for Water Transport in the circumstances of this matter were not legitimately due. The difficulties arise because, as discussed in Chapters 13 and 21 the inland transportation fees and after-sales-service fees were demanded of, or levied from, AWB as a result of directives or orders from Ministers or Ministries of the Iraqi Government. The fees were akin to a tariff imposed by the Iraqi government on all goods imported under the Oil-for-Food Programme. It is open to conclude from this that the payments were lawful, or at least not unlawful, as a matter of Iraqi law. The lawfulness of the impost, as a matter of Iraqi law, amounts to more than 'custom' or 'official tolerance,' these being matters that must be disregarded in working out whether a benefit was not legitimately due.

In these circumstances, the only way in which it could be asserted that the benefits were not legitimately due to the Iraqis was that they were contrary to United Nations sanctions. It is however, questionable whether payments that are not unlawful in a country as a matter of domestic law could be held to be 'not legitimately due' solely by reason of actions taken by the United Nations.

In the end it is not necessary to decide this question because, as will be seen, the fact that the payments were not unlawful in Iraq constitutes a defence to the offence in any event.

In relation to elements (3) and (4), 'foreign public official' is defined broadly in section 70.1 and includes an employee or official of a foreign government body. In the

circumstances of this matter, element (3) would be made out if the available evidence was sufficient to prove that AWB's intention in promising to pay the inland transport or after-sales-service fees was to influence an employee or official of the Iraqi Grains Board, in the course of that officer's duty as such an officer, to accept AWB's tender and agree to purchase its wheat. Proof that agreeing to pay the fees was a prerequisite to the Iraqi Grains Board entering into a contract and that AWB knew this would be sufficient proof.

Section 70.3 provides a number of defences to the offence created by subsection 70.2(1). The general thrust of the defences created in subsection 70.3(1) is that it is a defence if the defendant's conduct (relevantly, promising to provide the payment to the foreign public official) occurred in the country or place where the foreign public official was located, the defendant would not have been guilty of an offence against a law in place in that place or country. Subsection 70.2(1) contains a number of items that correspond to the paragraphs of the definition of foreign public official in section 70.1. In the circumstances currently under consideration, the foreign public official was an employee or official of a foreign government body as provided for in paragraph (a) of the section 70.1 definition. Item 1 of subsection 70.3(1) provides that if it were assumed that the person's (the defendant's) conduct had occurred wholly in the place where the central administration of the body is located (in this case Baghdad), the defendant is not guilty of an offence if the defendant would not have been guilt of an offence in that place (namely Baghdad).

By reason of sections 13.1, 13.2 and 13.3 of the Criminal Code, a defendant would bear an evidential burden in relation to the defence in subsection 70.3(1)—that is, the defendant must adduce or point to evidence that suggests a reasonable possibility that the matter (in this case the lawfulness of the conduct had it occurred in Baghdad) exists. Once that evidential burden is discharged, the prosecution bears the legal burden of disproving the existence of that matter beyond reasonable doubt.

There is evidence that points to the likelihood that if AWB's conduct in promising to make the payment to the Iraqis had occurred in Baghdad, AWB would not have been guilty of an offence against a law in force in that place. That is because the requirement to pay inland transport or after-sales-service fees to Iraqi entities was the result of directives or orders by Iraqi government Ministers or officials. The available inference is, therefore, that it was not unlawful in Iraq to make such payments. The fact that the payment may have been contrary to the United Nations sanctions would not have affected the lawfulness of the payments as a matter of Iraqi law.

It follows that, at least in relation to the payment of inland transport and after-sales-service fees, there is no reasonable basis for concluding that an offence may have been committed against subsection 70.2(1) of the Criminal Code.